UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

BIDONTHECITY.COM LLC, BIDONTHECITY
RUSSIA, LLC, GLOBAL ADVERTISING
STRATEGIES, INC.,

                                        Plaintiffs,

          – against –

HALVERSTON HOLDINGS LIMITED, BVI, RBC-
TV MOSCOW, SERGEY LAVRUKHIN,
ALEXANDER MORGULCHIK , MIKHAIL
SOSNOVSKY, VLADIMIR PAKHOMOV, NEIL
OSBORN, MICHAEL HAMMOND, CHRISTOPHE
CHARLIER, VALERY SENKO, EKATERINA
SALNIKOVA and ANTON KIRYUKHIN

                                        Defendants.

------------------------------------------------------------- x

*ECF*

No. *12 CV 9258 ALC*

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiffs BIDONTHECITY.COM LLC, BIDONTHECITY RUSSIA, LLC and GLOBAL

ADVERTISING STRATEGIES, INC., by and through their attorney Stroock & Stroock & Lavan

LLP, upon information and belief, allege against HALVERSTON HOLDINGS LIMITED, BVI,

RBC-TV MOSCOW, SERGEY LAVRUKHIN, ALEXANDER MORGULCHIK, MIKHAIL

SOSNOVSKY, VLADIMIR PAKHOMOV, NEIL OSBORN, MICHAEL HAMMOND,

CHRISTOPHE CHARLIER, VALERY SENKO, EKATERINA SALNIKOVA and ANTON

KIRYUKHIN (collectively "Defendants") as follows:

## THE PARTIES

1.     At all relevant times, Plaintiff BIDONTHECITY.COM LLC ("BOTC")

was and still is a limited liability company organized in the state of New York.

1

2.     At all relevant times, Plaintiff BIDONTHECITY RUSSIA, LLC ("BOTCR") was and still is a limited liability company organized in the state of Delaware.

3.     At all relevant times, Plaintiff GLOBAL ADVERTISING STRATEGIES, INC. ("GLOBAL") was and still is a New York corporation.

4.     At all relevant times, Defendant HALVERSTON HOLDINGS LIMITED, BVI ("RBCSub") was and still is a company incorporated under the laws of the British Virgin Islands and is a fully owned subsidiary of RBC-TV MOSCOW.

5.     At all relevant times, Defendant RBC-TV MOSCOW ("RBC") was and still is a closed joint stock company registered in the Russian Federation and the holding company of RBCSub.

6.     Upon information and believe, Defendant SERGEY LAVRUKHIN was the Chairman of the board of directors of RBC, and is currently the Chief Executive Officer and a director of RBC and a citizen of the Russian Federation.

7.     Upon information and believe, Defendant ALEXANDER MORGULCHIK was and still is a director of RBC and a citizen of the Russian Federation.

8.     Upon information and believe, Defendant MIKHAIL SOSNOVSKY was a director of RBC at all relevant times and is a citizen of the Russian Federation.

9.     Upon information and believe, Defendant VLADIMIR PAKHOMOV was a director of RBC at all relevant times and is a citizen of the Russian Federation.

10.     Upon information and believe, Defendant NEIL OSBORN was and still is a director of RBC and a citizen of the United Kingdom.

11.     Upon information and believe, Defendant MICHAEL HAMMOND was a director of RBC at all relevant times and a citizen of the United Kingdom.

12.     Upon information and believe, Defendant CHRISTOPHE CHARLIER was and still is a director of RBC and a citizen of France.

13.     Upon information and believe, Defendant VALERY SENKO was and still is a director of RBC and a citizen of the Russian Federation.

14.     Upon information and believe, Defendant EKATERINA SALNIKOVA was and still is a director of RBC and a citizen of the Russian Federation.

15.     Upon information and believe, Defendant ANTON KIRYUKHIN was a director of RBC at all relevant times and a citizen of the Russian Federation.

### JURISDICTION AND VENUE

16.     This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2), because the matter in controversy exceeds, exclusive of interest and costs, the sum of seventy five thousand dollars, and the plaintiffs BOTCR and GLOBAL are citizens of New York and Delaware, and Defendants are subjects of foreign states.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant regularly conducts business in this District, and because a substantial part of the acts or omissions giving rise to the claims asserted herein occurred in this District and because a defendant is subject to the Court's personal jurisdiction with respect to this action.

18.     Under the terms of the Agreement (defined below), "any judicial proceedings brought by or against any party pertaining to fraud or conversion and arising out of this Agreement shall be brought in the state or federal courts of New York City, New York

3

and, by execution and delivery of this Agreement, each of the parties accepts for itself the exclusive jurisdiction and venue of the aforesaid courts as trial courts, and irrevocably agrees to be bound by any judgment rendered thereby in connection with this Agreement after exhaustion of all appeals taken (or by the appropriate appellate court if such appellate court renders judgment)."

### THE JOINT VENTURE

19.    On or about August 1, 2010 BOTCR and RBCSub entered into a Joint Venture Agreement ("Agreement") under which, among other things, the parties agreed to organize a new company to serve as exclusive vehicle for the licensing and distribution of certain technology in the Russian Federation ("Company").

20.    The Agreement was the result of extensive in-person negotiations and resulting partnership and/or joint venture ("Joint Venture") between Plaintiffs and Defendants HALVERSTON HOLDINGS LIMITED, BVI and RBC-TV MOSCOW (collectively, "Corporate Defendants") that took place in New York, New York.

21.    The terms of the Agreement and the Joint Venture were personally negotiated by Defendant ALEXANDER MORGULCHIK and, upon information and believe, presented to Defendants SERGEY LAVRUKHIN, MIKHAIL SOSNOVSKY, VLADIMIR PAKHOMOV, NEIL OSBORN, MICHAEL HAMMOND, CHRISTOPHE CHARLIER, VALERY SENKO, EKATERINA SALNIKOVA and ANTON KIRYUKHIN (collectively, "Individual Defendants") for approval.  The entire board and each individual member of the board participated in review, consideration and approval of the terms and conditions of the Joint Venture and the Agreement.

4

22.     Consistent with the Joint Venture and the Agreement, on or about November 8, 2010, RBC issued a press release announcing announced that "it has partnered with leading online luxury real estate auction site BidOnTheCity.com as well as the leading international marketing agency Global Advertising Strategies (Global), to launch the BidOnTheCity platform in Russia." The press release further acknowledged:

> As part of the partnership RBC received a 45% stake in the company, which will operate on the Russian market. RBC will provide access to its diverse media offerings – online, TV and print – to establish BidontheCity's presence within the Russian market as well as position it as the premier source for Russians interested in bidding on high-end real estate. With its network of media and marketing partners around the world, Global will continue to provide strategic direction and guide BidontheCity's international expansion. The initial marketing campaign for BidontheCity Russia is slated to launch in November 2010.

23.     BOTCR and BOTC (collectively, "BOTC Plaintiffs") agreed under the Agreement and pursuant to the terms of the Joint Venture with Corporate Defendants, among other things, to provide the Company with the irrevocable, perpetual and exclusive license to use and otherwise commercially exploit in the Russian Federation BidOnTheCity.com -- BOTC's website offering an online real estate trading platform to sell, buy and rent residential and commercial real estate properties via live online, TV and mobile bidding ("Bidding Platform").

24.     Corporate Defendants agreed under the Agreement and pursuant to the terms of the Joint Venture, among other things, to provide advertising and PR support on internet, TV and printed media owned by RBC. RBCSub's initial capital contribution was to be in the form of providing such advertising and PR support in the amount of Two Million US Dollars ($2,000,000). In addition, for the first year of the Company, Corporate Defendants were to provide staff of one Russian-based employee and office/bidding center support.

25.     Under the terms of the Agreement and the Joint Venture, BOTCR, RBCSub and GLOBAL were to receive 45%, 45% and 10% of the Membership Interest, respectively, in exchange for initial contribution, and profits and losses were to be distributed according to the Membership Interest in the Company.

26.     Under the terms of the Agreement at §5.4 , a "Party's failure to make the initial contribution, if not cured within thirty (30) Business Days, will result in a proportional reduction of ownership Membership Interest of said Party in the Company."

27.     Plaintiffs duly performed their obligations under the Joint Venture and the Agreement and their performance was accepted by Defendants.

28.     Corporate Defendants, on the other hand, failed to provide the initial contribution under the Agreement and as otherwise promised as part of the Joint Venture.

29.     Corporate Defendants never invested Two Million US Dollars ($2,000,000) in the Joint Venture with Plaintiffs.

30.     Although Corporate Defendants failed to provide their initial contribution, Plaintiffs have recently learned that in the official financing statement published for the year 2010, RBC reported the investment in Joint Venture with Plaintiffs in the amount of Two Million US Dollars ($2,000,000).

31.     Plaintiffs notified Corporate Defendants on multiple occasions about Corporate Defendants' failure to fulfill their obligations under the Joint Venture and pursuant to the clear terms of the Agreement.

32.     Corporate Defendants and, specifically, Defendants ALEXANDER MORGULCHIK and SERGEY LAVRUKHIN repeatedly reassured Plaintiffs that Corporate

6

Defendants would fulfill their obligations under the Joint Venture and explained Corporate Defendants' performance failures as stemming from changes in management of RBC.

33.    From the inception of the Joint Venture neither RBC nor RBCSub voiced any concerns or complaints about Plaintiffs' performance under the Joint Venture. Quite to the contrary, Defendants ALEXANDER MORGULCHIK and SERGEY LAVRUKHIN, acting in their capacity as directors and officers of Corporate Defendants, proposed massive expansion of the Joint Venture, and Plaintiffs, in reliance on such promises of performance, undertook considerable efforts to expand the Joint Venture.

34.    During the year 2012, Defendants ALEXANDER MORGULCHIK and SERGEY LAVRUKHIN and Plaintiffs held a number of meetings regarding the expansion of the Joint Venture.

35.    As a result of those meetings it was agreed that as part of the Joint Venture, Plaintiffs and Corporate Defendants would expand operations of the Company and engage in sale of luxury real estate and concierge real estate services in Moscow and Moscow Region with the help of new financial and strategic partners while RBC and RBCSub will greatly increase the marketing, PR and business development of the Joint Venture.

36.    Upon information and believe, the expansion of the Joint Venture was presented to and discussed with the Individual Defendants.

37.    As part of the expansion plan, BOTC Plaintiffs entered into various agreements with third parties.  By way of example, BOTC Plaintiffs entered into a service agreement for the provision of financial and strategic support, and in various consulting and employment agreements with various companies and individuals.

7

38.    On or about November 13, 2012, BOTC Plaintiffs have confirmed to SERGEY LAVRUKHIN and other top management of RBC that BOTC Plaintiffs had completed the market survey and had secured a number of additional financial and strategic partners for the expansion.

39.    At all times, Defendants knew and encouraged Plaintiffs' negotiations and contracting with third parties in order to facilitate the expansion of the Joint Venture.

40.    On or about November 30, 2012, BOTC Plaintiffs learned from a third party that RBC issued its third quarter of 2012 financial results which announced, among other things, that "RBC's management completed the audit of asset portfolio during the reporting period and commenced its optimization. A number of small non-business startups, including ... BidontheCity ... were shut down as part of the optimization."

41.    Defendants had no right to shut down BidOnTheCity or the Joint Venture pursuant to clear terms of the Agreement.

42.    Furthermore, at all times Defendants encouraged and approved Plaintiffs' efforts towards expansion of the Joint Venture.

43.    Defendants knowingly and/or recklessly issued a false press release announcing the shutdown of BidOnTheCity and caused damage to Plaintiffs' contractual obligations and business reputation both in the Russian Federation and Internationally.

44.    Upon information and belief, RBC's board of directors and each individual director participated and approved the termination and shutting down of BidOnTheCity and the Joint Venture while each of them knew or should have known that there was no right for Corporate Defendants to shut down BidOnTheCity.

8

45.     Individual Defendants knew or should have known that such wrongful and fraudulent actions would result in termination of various agreements and commitments that Plaintiffs had entered into, and otherwise would defame and damage BOTC Plaintiffs.

46.     Corporate Defendants never contributed Two Million US Dollars ($2,000,000) towards the Joint Venture as required under the clear terms of the Agreement, all while reporting a $2,000,000 investment in the Joint Venture on their official financial statements.

**COUNT I**
**BREACH OF JOINT VENTURE**

47.     The allegations of Paragraphs 1 through 46 are incorporated by reference as if fully set forth herein.

48.     Plaintiffs and Corporate Defendants were formed a partnership and/or joint venture within the meaning NY Partnership Act and under common law.

49.     Each of the parties agreed to form an enterprise for profit with a sharing of losses and profits.

50.     The parties intended to be partners and/or joint venturers in the business.

51.     There was a joint control over the management of the resulting business.

52.     Corporate Defendants' actions described herein, as well as other acts to be uncovered constitute a breach of the Joint Venture.

53.    As a result of the foregoing, Plaintiffs have suffered damages including, but not limited to loss of resources invested in Joint Venture, accounting expenses, legal expenses, and other out-of-pocket expenses and increased administrative and other costs and loss of business opportunities and future profits out of the Plaintiffs' share in the Joint Venture; as such Plaintiffs demand judgment in an amount to be proven at trial, but believed to be in excess of $30,000,000.

## COUNT II
## BREACH OF CONTRACT

54.    The allegations of Paragraphs 1 through 53 are incorporated by reference as if fully set forth herein.

55.    Plaintiffs BOTCR and Global and Defendant RBCSub are bound by the terms of the Agreement.

56.    Plaintiffs fully complied with their obligations under the Agreement.

57.    As a result of RBCSubs's acts as described herein, RBCSub breached its obligations under the Agreement.

58.    As a result of the foregoing, Plaintiffs have suffered damages including, but not limited to loss of resources invested in Joint Venture, accounting expenses, legal expenses, and other out-of-pocket expenses and increased administrative and other costs and loss of business opportunities and future profits out of the Plaintiffs' share in the Joint Venture; as such Plaintiffs demand judgment in an amount to be proven at trial, but believed to be in excess of $30,000,000.

## COUNT III
## PROMISSORY ESTOPPEL

10

59.    The allegations of Paragraphs 1 through 58 are incorporated by reference as if fully set forth herein.

60.    Over the course of several meetings, as well as written and oral communications, Defendants ALEXANDER MORGULCHIK and SERGEY LAVRUKHIN, acting on behalf of Corporate Defendants, repeatedly and intentionally made material promises to Plaintiffs about proceeding into a business arrangement to expand the current Joint Venture. Specifically, Defendants ALEXANDER MORGULCHIK and SERGEY LAVRUKHIN promised Plaintiffs to expand the operations of the current Joint Venture to sale of luxury real estate and concierge real estate services.

61.    Defendants reasonably expected to induce Plaintiffs to take actions of a definite and substantial character, and Plaintiffs justifiably relied upon Defendants' promises to its detriment.  Specifically, Plaintiffs were thereby induced to act in a definite and substantial manner by, among other things, entering into agreements with various third parties in accordance with the promised expansion of the Joint Venture.

62.    Plaintiffs spent substantial financial and human resources to create business development plan, establish business and contractual relationships with third parties as required for the Joint Venture such that it would be unjust not to enforce Defendants' promises.

63.    As a direct and proximate result of Defendants' breaches of promises, Plaintiffs have suffered damages including, but not limited to loss of resources invested in Joint Venture, accounting expenses, legal expenses, and other out-of-pocket expenses and increased administrative and other costs and loss of business opportunities and future profits out of the Plaintiffs' share in the Joint Venture; as such Plaintiffs demand judgment in an amount to be proven at trial, but believed to be in excess of $30,000,000.

11

## COUNT IV
## WRONGFUL TERMINATION OF PARTNERSHIP AND/OR JOINT VENTURE

64. The allegations of Paragraphs 1 through 63 are incorporated by reference as if fully set forth herein.

65. Plaintiffs and Corporate Defendants were involved in a partnership and/or joint venture within the meaning NY Partnership Act and under common law.

66. Each of the parties agreed to form an enterprise for profit with a sharing of losses and profits.

67. There was a joint control over the management of the resulting business.

68. The parties intended to be partners and/or joint venturers in the business.

69. RBC decided to unilaterally terminate the relationship to the detriment of Plaintiffs.

70. As a result of the foregoing, Plaintiffs have suffered damages including, but not limited to loss of resources invested in Joint Venture, accounting expenses, legal expenses, and other out-of-pocket expenses and increased administrative and other costs and loss of business opportunities and future profits out of the Plaintiffs' share in the Joint Venture; as such Plaintiffs demand judgment in an amount to be proven at trial, but believed to be in excess of $30,000,000.

## COUNT V
## BREACH OF FIDUCIARY DUTY

71. The allegations of Paragraphs 1 through 70 are incorporated by reference as if fully set forth herein.

12

72.     As a result of the Joint Venture and/or Joint Venture Agreement, Corporate Defendants owed Plaintiffs a fiduciary duty, and were found to perform its duties, and to serve in good faith, with that degree of care that an ordinary prudent person or entity in a like position would use under similar circumstances.

73.     By virtue of their relationship, Plaintiffs and Corporate Defendants were fiduciaries to one another, and owed one another, among other fiduciary duties, the duty of good faith and fair dealing, the duty not to usurp a partnership opportunity, a duty not to act adversely to the partnership's interest, a duty not to enter into competition with the partnership, and a duty to disclose information material to the partnership.

74.     Corporate Defendants breached its fiduciary duty to Plaintiffs by at least the following acts:

a. By failing to contribute to the joint venture and constantly providing representations that contribution was forthcoming;

b. By misrepresenting to Plaintiffs its intentions to expand the Joint Venture;

c. By purporting to publicly terminate the joint venture;

d. By failing to disclose its decision to terminate the Joint Venture before doing so publicly.

e. By knowingly and intentionally inducing Plaintiffs to enter into third party agreements in reliance on the plans for expansion of the Joint Venture; and

e. By issuing a press release announcing the purported shut down of BidOnTheCity and the Joint Venture and damaging the business reputations of Plaintiffs.

75.     As a result of the foregoing, Plaintiffs have suffered damages including, but not limited to loss of resources invested in Joint Venture, accounting expenses, legal expenses, and other out-of-pocket expenses and increased administrative and other costs and loss of business opportunities and future profits out of the Plaintiffs' share in the Joint Venture; as such Plaintiffs demand judgment in an amount to be proven at trial, but believed to be in excess of $30,000,000.

76.     Furthermore, the acts of Corporate Defendants evidence such high degree of moral culpability as to be equivalent of criminal indifference to its civil actions, are an affront to the public, and as such, subject Defendants to punitive damages.

## COUNT VI

### FRAUD AND/OR FRAUDULENT INDUCEMENT AND/OR FRAUDULENT CONCEALMENT

77.     The allegations of Paragraphs 1 through 76 are incorporated by reference as if fully set forth herein.

78.     Beginning in November of 2010, and continuing until November 30, 2012, Defendants ALEXANDER MORGULCHIK and SERGEY LAVRUKHIN, acting on behalf of Corporate Defendants, made material misrepresentations, concealments and/or omissions to Plaintiffs.

79.     The Defendants' representations and/or material omissions included, but were not limited to, the following statements made at various times between November of 2010 and November 30, 2012, with the intent that they would be believed and relied upon by Plaintiffs:

   a. That Corporate Defendants would provide a marketing plan and would make the contribution in accordance with the Joint Venture Agreement;

14

b.  That Corporate Defendants would provide office and provide business development to the Joint Venture as provided in the Joint Venture Agreement;

c.  That Corporate Defendants would do business with Plaintiffs as part of the Joint Venture;

d.  That Corporate Defendants would want to create a premium or "white glove" brand out of the Joint Venture;

e.  That Corporate Defendants would substantially expand on the marketing, promotion, PR and business development of the Joint Venture;

f.  That Corporate Defendants want to expand the Joint Venture to include sale of luxury real estate and concierge real estate services; and

g.  That Plaintiffs should seek out and secure additional financial and operating partners as part of the expansion plan of the Joint Venture.

80.  These material representations, concealments and/or omissions were false and known to be false.

81.  Defendants had a duty as a result of a special relationship created through the partnership and/or joint venture relationship, to give Plaintiffs correct and true information regarding its plans.

82.  The representations, concealments and/or omissions were known to Defendants to be desired by Plaintiffs for business purposes.

83.  Defendant knew that Plaintiffs intended to rely and act on such representations, concealments and/or omissions.

84.  Acting in reasonable reliance upon Defendants' representations, concealments and/or material omissions, Plaintiffs took actions which included, but were not

15

limited to, the following: continuing to expend funds to establish the ground work and organization required to create the joint venture company, and preparing detailed plans for the expansion of the Joint Venture, including hiring new personnel and entering into contractual relationships with third parties.

85.     Defendants breached their representations to Plaintiffs by unilaterally and unlawfully terminating the joint venture without any notice to Plaintiffs and announcing such termination publicly via press release.

86.     As a result of the foregoing, Plaintiffs have suffered damages including, but not limited to loss of resources invested in Joint Venture, accounting expenses, legal expenses, and other out-of-pocket expenses and increased administrative and other costs and loss of business opportunities and future profits out of the Plaintiffs' share in the Joint Venture; as such Plaintiffs demand judgment in an amount to be proven at trial, but believed to be in excess of $30,000,000.

## COUNT VII
## TORTIOUS INTERFERENCE WITH CONTRACT, BUSINESS RELATIONSHIP AND EXPECTANCY

87.     The allegations of Paragraphs 1 through 86 are incorporated by reference as if set forth herein.

88.     Beginning in or about April of 2012, Plaintiffs had an on-going contract, business relationship and/or expectancy with various third parties in connection with the expansion of the Joint Venture.

89.     Such contracts, business relationship and/or expectancy continued until the commission of wrongful acts by the Defendants.

16

90.     By virtue of extensive meetings and communications with Defendants ALEXANDER MORGULCHIK and SERGEY LAVRUKHIN in November, 2012, Defendants knew of and understood the significance of Plaintiffs contracts, relationships and/or expectancies with third parties.

91.     Defendants knew of Plaintiffs' extensive and substantial investment in the establishment and expansion of the Joint Venture.

92.     Defendants knowingly and intentionally engaged in an improper, unjustified, unethical and wrongful scheme to destroy Plaintiffs' contracts, business relationships and/or expectancies with third parties in ways which included, but were not limited to making false and misleading statements to and about Plaintiffs.

93.     As a result of the foregoing, Plaintiffs have suffered damages including, but not limited to loss of resources invested in Joint Venture, accounting expenses, legal expenses, and other out-of-pocket expenses and increased administrative and other costs, loss of business opportunities and future profits and incurring liabilities under contracts with third parties; as such Plaintiffs demand judgment in an amount to be proven at trial, but believed to be in excess of $30,000,000.

## COUNT VIII
## DEFAMATION

94.     The allegations of Paragraphs 1 through 93 are incorporated by reference as if set forth herein.

95.     RBC and Individual Defendants knew that the statements, as alleged in the third quarter of 2012 financial results, as pertaining to the Joint Venture, were false when they made them.   RBC made these statements willfully and maliciously with the intent to damage the reputation of BOTC Plaintiffs.

17

96.     RBC's statements publicly announcing that BidOnTheCity was shut down had no basis in fact, was inexcusable, caused BOTC Plaintiffs damage and was slanderous per se.

97.     As a result of the foregoing, BOTC Plaintiffs have suffered damages to their business name and reputation and demand judgment in an amount to be proven at trial, but believed to be in excess of $30,000,000.

**WHEREFORE**, Plaintiffs demand a judgment as follows:

A.     On the each of the FIRST, SECOND, THIRD, FOURTH, FIFTH, SIXTH, SEVENTH and EIGHTH causes of action, that Plaintiffs be awarded damages in the amount to be determined at trial, but not less than $30,000,000, together with interest;

B.     That Plaintiffs be awarded costs, disbursements, and attorneys' fees to the fullest extent permitted by law;

C.     That Plaintiffs be awarded punitive damages, to the fullest extent permitted by law;

D.     For such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury as to all claims in this litigation.


Dated:  December 19, 2012
New York, New York

STROOCK & STROOCK & LAVAN LLP

By: _____
Melvin A. Brosterman, Esq.
Attorney for Plaintiffs
180 Maiden Lane
New York, New York  10038
(212) 806-5400