UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

BIDONTHECITY.COM LLC, BIDONTHECITY      :
RUSSIA, LLC, GLOBAL ADVERTISING
STRATEGIES, INC.,                       :

                          Plaintiffs,   :        12 Civ. 9258 (ALC)(MHD)

          -against-                     :        **OPINION AND ORDER**

HALVERSTON HOLDINGS LIMITED, BVI,       :
RBC-TV MOSCOW, SERGEY LAVRUKHIN,
ALEXANDER MORGULCHIK, MIKHAIL           :
SOSNOVSKY, VLADIMIR PAKHOMOV, NEIL
OSBORN, MICHAEL HAMMOND,                :
CHRISTOPHE CHARLIER, VALERY SENKO,
EKATERINA SALNIKOVA, ANTON              :
KIRYUKHIN,
                                        :
                          Defendants.
-------------------------------------------------------------X

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiffs Bidonthecity.com, LLC (BOTC), BidonthecityRussia, LLC (BOTC Russia),

and Global Advertising Strategies, Inc. (Global) (collectively, "Plaintiffs") brought this action

under the Court's diversity jurisdiction for numerous state-law claims stemming from a joint

venture that came undone.  Now Defendants Halverston Holdings Limited, BVI ("Halverston"),

RBC-TV Moscow ("RBC" and together, with Halverston, the "Corporate Defendants") and

Sergey Lavrukhin, Mikhail Sosnovsky, Vladimir Pakhomov, Neil Osborn, Michael Hammond,

Christophe Charlier, Valery Senko, Ekaterina Salnikova, and Anton Kiryukhin, (collectively, the

Individual Defendants," and together with the Corporate Defendants, the "Moving Defendants")

move to dismiss the complaint.[1]

---

[1] The Moving Defendants include all Defendants except Alexander Morgulchik who has not
entered an appearance in this case.

1

The Moving Defendants seek dismissal pursuant to: (1) Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction, (2) Rule 12(b)(5) for lack of adequate service, and (3) Rule 12(b)(6) for failure to state a claim. For the reasons stated herein, the motion is granted in part and denied in part.

BACKGROUND

Plaintiff BOTC offers an online real estate platform to sell, buy and rent residential and commercial real estate property via live online, TV and mobile bidding (Compl. ¶ 23). On August 1, 2010, the Joint Venture Agreement ("JVA") was entered by and among Plaintiff BOTC Russia, a Delaware limited liability company; Defendant Halverston, a company incorporated in the British Virgin Islands; and Plaintiff Global Advertising, a New York corporation. The JVA sought to develop a company that would operate in Russia, namely, Plaintiff BOTC Russia, using the BOTC platform as adapted to the Russian market and serve as the exclusive licensee of BOTC and its bidding platform in Russia.

Defendant Halverston is a wholly-owned subsidiary of Defendant RBC (together, with Halverson, the "Corporate Defendants") (Compl. ¶ 4). The Individual Defendants were, at the time the JVA was signed, directors on RBC's board of directors and citizens of foreign nations (see Compl. ¶¶ 8-15). The Individual Defendants are alleged to have reviewed the JVA for approval (Compl. ¶ 21) and subsequently participated and approved the termination and shutting down of BOTC and the Joint Venture" (Compl. ¶ 44, id. ¶ 45). Although Halverston is the only Defendant to have signed the JVA, the basic thrust of Plaintiffs' argument is that Halverston is a mere pawn of RBC and RBC is really in control.

According to Plaintiffs, RBC was to provide an initial capital contribution in the amount of two million US dollars ($2,000,000) to provide such advertising and PR and provide one

2

Russia-based employee and support for the bidding center. (Compl. ¶ 24).[2] However, RBC refused to make its capital contribution or otherwise support the joint venture all while encouraging the expansion of the business and knowing Plaintiffs were making contractual commitments on behalf of the venture. (Compl. ¶ 24).

On November 30, 2012, Plaintiffs learned of a RBC press release announcing financial results for the third quarter of 2012, in which RBC announced, *inter alia*, that "RBC's management completed the audit of asset portfolio during the reporting period and commenced its optimization. A number of small non-business startups, including . . . BidontheCity. . . were shut down as part of the optimization." (Compl. ¶ 40). Plaintiff alleges that Defendants had no right to terminate the venture and in erroneously claiming to shut down BOTC, Plaintiffs suffered injury at home and abroad. This lawsuit followed.

## DISCUSSION

As stated above, the Moving Defendants seek dismissal on three grounds: for lack of personal jurisdiction; for lack of adequate service; and for failure to state a claim. The Court considers each basis for dismissal in turn.

---

[2] The Court presumes that any in-kind contributions by the Corporate Defendants were collapsed into this $2 million initial contribution. (Declaration of Albert Feinstein in Opposition to Defendants' Motion to Dismiss the Complaint ("Feinstein Decl.") Ex. 1, JVA § 5.2; Compl. ¶ 24) ("Corporate Defendants agreed under the Agreement. . . to provide advertising and PR support on internet, TV and printed media owned by RBC. RBCSub's [Halverston's] initial capital contribution was to be *in the form of providing such advertising and PR support in the amount of $2 million.*") (emphasis added).

I.      Dismissal for Lack of Personal Jurisdiction

I first review the complaint for indicators of personal jurisdiction over the Moving

Defendants.  *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963) ("Not only does

logic compel initial consideration of the issue of jurisdiction over the defendant—a court without

such jurisdiction lacks power to dismiss a complaint for failure to state a claim—but the

functional difference that flows from the ground selected for dismissal likewise compels

considering jurisdiction and venue questions first."); *Phoenix-Dolezal v. Lili Ni*, No. 11 Civ.

3722(LAK)(JLC), 2012 WL 121105, at *4 (S.D.N.Y. Jan. 17, 2012) (Report and

Recommendation).  This is also prudent as the motions have different consequences for a

litigant, for instance, the plaintiff's ability to re-file a claim.  *Arrowsmith*, 320 F.2d at 221 ("A

dismissal for lack of jurisdiction or improper venue does not preclude a subsequent action in an

appropriate forum, whereas a dismissal for failure to state a claim upon which relief can be

granted is with prejudice.").

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden

of establishing jurisdiction.  *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d

Cir. 2003).  On a motion to dismiss for lack of personal jurisdiction, the Court may consider

affidavits submitted by the parties. *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F.

Supp. 2d 308, 314 (S.D.N.Y. 2009) (citing *Grand River Enter. Six Nations, Ltd. v. Pryor,* 425

F.3d 158, 165 (2d Cir. 2005)); *Pilates, Inc. v. Pilates Institute, Inc.*, 891 F. Supp. 175, 178 n.2

(S.D.N.Y. 1995) ("[U]nlike Rule 12(b)(6) motions. . . "[i]t is well-settled that in considering

jurisdictional motions, the Court may consider evidence outside of the pleadings in reaching its

decision without necessitating the use of Rule 56.") (internal citation and quotation marks

omitted).

4

In the absence of jurisdictional discovery, "allegations of jurisdictional fact must be construed in the light most favorable to the plaintiff." *National Union Fire Ins. Co. of Pittsburgh, PA. v. BP Amoco P.L.C.*, 319 F. Supp. 2d 352, 357 (S.D.N.Y. 2004) (citing *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986). Thus, "[w]here, as here, a court relies on pleadings and affidavits," *Wickers Sportswear, Inc. v. Gentry Mills, Inc.*, 411 F. Supp. 2d 202, 205 (E.D.N.Y. 2006), the complaint need "only allege facts constituting a prima facie showing of personal jurisdiction," *National Union*, 319 F. Supp. 2d at 357 (citation omitted)). The Court, however, "will not draw 'argumentative inferences' in the plaintiff's favor" and need not "accept as true a legal conclusion couched as factual allegation." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,* 673 F.3d 50, 59 (2d Cir. 2012) (internal citations omitted).

Absent a statutory provision allowing for nationwide jurisdiction, where a defendant resides outside the forum state, a federal court applies the forum state's personal jurisdiction rules. *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997). A New York court may exercise personal jurisdiction over an out-of-state defendant if "New York law would confer upon its courts the jurisdiction to reach the defendant" and, so finding, if "extension of jurisdiction is permissible under the Due Process Clause of the Fourteenth Amendment." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2003); *Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 396 (2d Cir. 2009) ("A court must have a statutory basis for asserting jurisdiction over a defendant, and the Due Process Clause typically also demands that the defendant, if not present within the territory of the forum, have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.") (internal citations, quotation marks and alterations omitted).

To establish personal jurisdiction over a foreign defendant under New York law, a plaintiff must "demonstrate either that the defendant was 'present' and 'doing business' in New York within the meaning of [CPLR] § 301, or that the defendant committed acts within the scope of New York's long-arm statute, [CPLR] § 302." *Schultz v. Safra Nat. Bank of New York,* 377 Fed. Appx. 101, 102 (2d Cir. 2010). CPLR § 302 is New York's "long-arm" statute permitting jurisdiction over an out-of-state defendant. It is axiomatic that Section 302 provides only specific jurisdiction over a non-domiciliary defendant arising out of particular acts. *Roe v. Arnold,* 502 F. Supp. 2d 346, 350 (E.D.N.Y. 2007); *see Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (cause of action under specific theory of jurisdiction related to or arising out of defendant's forum-related activities).

Defendants appear to concede that Halverston, while not subject to general jurisdiction in New York, is at a minimum subject to specific jurisdiction for acts related to the JVA. (Defs. Mem. at 12 & n.4). Therefore, the Court need only consider whether the other Moving Defendants have subjected themselves to personal jurisdiction before this Court.

Moving Defendants argue that the other defendants are not subject to personal jurisdiction because they are not New York residents to be subject to general jurisdiction in the state under CPLR 301, nor have minimum contacts with New York to justify long arm jurisdiction under CPLR 302. In rebuttal, Plaintiffs put forth a theory of jurisdiction by proxy, namely, that Halverston was an agent and/or a "mere department" of RBC. *See GEM Advisors,* 667 F. Supp. 2d at 318-20.

A. Halverston is an Agent of RBC

To establish an agency relationship for purposes of personal jurisdiction, a plaintiff must show that the alleged agent "acts 'for the benefit of, and with the knowledge and consent of, the non-resident principal,' and over which that principal exercises 'some control'." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. BP Amoco P.L.C.,* 319 F. Supp. 2d 352, 360 (S.D.N.Y.2004) (quoting *CutCo Indus.,* 806 F.2d at 366) (internal citations omitted).  In determining if an agency relationship exists for purposes of personal jurisdiction, a court should analyze "the realities of the relationship in question rather than the formalities of agency law." *Id.* (citing *CutCo Indus.,* 806 F.2d at 366).  At a minimum, however, agency requires the defendant's agent took actions in New York or transacted business in New York for the benefit of the defendant.  *See Kreutter v. McFadden Oil Corp.,* 71 N.Y.2d 460, 466 (N.Y. 1988).  Thus, to establish personal jurisdiction over RBC in this case, Halverston would have to be acting for RBC.

Here, Plaintiffs allege facts that Halverston acted for the benefit of RBC in New York, with RBC's consent and was subject to at least some control by RBC when it entered the JVA. Specifically, Plaintiffs allege that Halverston participated in "extensive in-person negotiations" for the JVA "that took place in New York, New York".  (Compl. ¶ 20).  The press release announcing the joint venture in November 2010 and financial results for the third quarter of 2012, allegedly announcing the shutdown of BOTC, were press releases for RBC, *not* Halverston. (*See* Compl. ¶¶ 22, 40), facts which highlight that Halverston acted for the benefit of RBC when it entered the JVA. Furthermore, by the terms of the JVA, "BOTCR, RBCSub [i.e., Halverston] and Global will receive 45%, 45% and 10% of the Membership Interest, respectively." (Feinstein Decl." Ex. 1, JVA, at § 7.1).  In the November 2010 press release, it was RBC—not Halverston—that announced it had acquired a 45% stake in the partnership with

BOTC. (Compl. ¶ 22; Feinstein Decl. Ex. 2). These consistencies are not coincidence. They establish, regardless of the formalities of agency law, that Halverston was an agent of RBC at least as far as the JVA was concerned.

Moreover, although Plaintiffs' only allegations of RBCs' actual involvement with the joint venture come after the JVA was penned, through Defendants Morgulchik and Lavrukhin, (*see* Compl. ¶¶ 32-34), if nothing else, this involvement ratified Halverston's entry of the JVA on behalf of RBC. It is a hallmark principle of agency law that authority can be granted after the contract has been entered, if the principal has knowledge of all material facts regarding the contracts, and accepts its benefits. *Matter of Bennett Funding Group, Inc.,* 336 F3d 94, 100 (2d Cir. 2003) ("New York law recognizes the well-established principle of ratification, which imputes an agent's conduct to a principal who condones those acts and accepts the benefits of them.") (quoting *In Matter of New York State Medical Transporters Assoc.,* 160 A.D.2d 710, 553 N.Y.S.2d 790, 792 (2d Dep't 1990), *aff'd* 77 N.Y.2d 126, 564 N.Y.S.2d 1007, 566 N.E.2d 134 (1990) (internal quotation marks omitted)). This ratification establishes that Halverston acted with the knowledge and consent of RBC. Therefore, Halverston was an agent of RBC as pertains the subject matter of this litigation—the joint venture agreement—and this court's exercise of personal jurisdiction over RBC is proper.

The complaint sets forth a prima facie claim that Halverston acted as RBC's agent for jurisdictional purposes. The motion to dismiss for lack of personal jurisdiction as to RBC is denied.

Having determined that jurisdiction over RBC is proper because Halverston is an agent of RBC, I need not also consider whether Halverston was also a "mere department" of RBC.

B.  Jurisdiction Over the Individual Defendants

The Individual Defendants, however, are a different matter altogether.  Jurisdiction over a corporation's board member, officer or employee, in his or her individual capacity, must be premised on the defendant's own personal contacts with the forum, and not the acts and/or contacts carried out by the defendant in his or her corporate capacity.  *In re Terrorist Attacks on September 11, 2001*, 718 F.Supp.2d 456, 470-71 (S.D.N.Y. 2010) (collecting cases).  Indeed, "a person's status as a board member is not alone sufficient to establish jurisdiction."  *In re AstraZeneca Sec. Litig.,* 559 F.Supp.2d 453, 467 (S.D.N.Y. 2008) (citations omitted), *aff'd sub nom. State Univs. Ret. Sys. of Illinois v. Astrazeneca, PLC,* 334 Fed. Appx. 404 (2d Cir.2009).

Plaintiffs allege that the terms of the JVA were presented to the Individual Defendants for approval and "[t]he entire board and each individual member of the board participated in review, consideration and approval of the terms and conditions of the Joint Venture and the Agreement." (Compl. ¶ 21).  Plaintiffs then allege that "RBC's board of directors and each individual director participated and approved the termination and shutting down of BOTC and the Joint Venture while each of them knew or should have known that there was no right for Corporate Defendants to shut down [BOTC]" (Compl. ¶ 44).  Finally, Plaintiffs allege that the "Individual Defendants knew or should have know that such wrongful and fraudulent actions would result in termination of various amounts and commitments that Plaintiffs had entered into, and otherwise would defame and damage" Plaintiffs.  (Compl. ¶ 45).  As to Morgulchik and Lavrukhin, Plaintiffs also allege Plaintiffs also allege that Morgulchik and Lavrukhin and Plaintiffs "held a number of meetings regarding the expansion of the Joint Venture." (Compl. ¶ 34).

"As none of these allegations include a claim that the [Moving Defendants] ever entered the United States, the Court considers Plaintiffs' assertions in light of the Restatement of Conflict

9

of Laws § 37." *In re Alstom SA*, 406 F. Supp. 2d 346, 399 (S.D.N.Y. 2005). "A state has power

to exercise judicial jurisdiction over an individual who causes effects in the state by an act done

elsewhere with respect to any claim arising from these effects unless the nature of the effects and

of the individual's relationship to the state make the exercise of such jurisdiction unreasonable."

*Id.* (quoting Restatement of Conflict of Laws § 37); *Charas v. Sand Tech. Sys. Int'l, Inc.,* 1992

WL 296406, at *4–*5 (S.D.N.Y. Oct. 7, 1992) (no personal jurisdiction over defendant who

does not own real estate in the United States or maintain an office and has not entered United

States for corporation's business). It is undisputed that all Moving Defendants are non-residents

of the United States (Compl. ¶¶ 6-15) and, more problematic, Plaintiffs allege no facts to assert

the Individual Defendants have any contacts with the United States. (*See also* Defendant

Declarations Dkt. Nos. 19-27) (declaring non-residence in New York, no interest in real or

personal property in New York and otherwise limited contacts with New York).

   The Individual Defendants' status as directors in itself, even if they "participated"—

whatever that might mean—in the drafting of the JVA is insufficient to establish jurisdiction. *In*

*re Alstom SA*, 406 F. Supp. 2d at 399 (defendant's "status as a Board member in itself, even if he

in some respect oversaw [corporation's] execution of the [] contract, is too tenuous a connection

to plausibly claim that this status alone directly and foreseeably gave rise to the effects

complained of by the Plaintiffs" insufficient as a matter of law for personal jurisdiction).

Moreover, Plaintiffs do not allege that the Individual Defendants were somehow responsible for

the erroneous wording of the press release. So it is not reasonably foreseeable that terminating

the Joint Venture or stating that BOTC was ended would result in the alleged effects. Moreover,

failures in their corporate capacity do not give rise personal jurisdiction over directors where

none otherwise lies. *DaimlerChrysler AG Securities Litigation*, 247 F. Supp. 2d 579, 587 (D.

Del. 2003) ("[W]here a board member's only contact with the forum has been in the scope of his corporate capacity, the individual's contact is insufficient to support the exercise of personal jurisdiction."); *Charas v. Sand Tech. Sys. Int'l, Inc.,* 1992 WL 296406, at *4 (S.D.N.Y. Oct. 7, 1992) (no personal jurisdiction over former outside director "charged with failing to monitor [corporation's] affairs and thereby permitting the fraudulent activities to continue").

Having determined that the Individual Defendants lack the requisite minimal contacts for either general or specific jurisdiction, the Court need not consider the second prong of the due process test in order to determine whether the exercise of jurisdiction would be reasonable under the particular circumstances of the case. *In re Terrorist Attacks on September 11, 2001,* 718 F. Supp. 2d 456, 469 (S.D.N.Y. 2010) (citation omitted).  Under these facts, the exercise of personal jurisdiction over the Individual Defendants under CPLR § 302 is not proper. Accordingly, the Court does not have jurisdiction over the Individual Defendants and dismisses the complaint against them.

II.     Dismissal for Inadequate Service of Process

"When a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service." *Dickerson v. Napolitano,* 604 F.3d 732, 752-53 (2d Cir. 2010) (quoting *Burda Media, Inc. v. Viertel,* 417 F.3d 292, 298 (2d Cir. 2005).  In the absence of effective service of summons, a federal court may not exercise personal jurisdiction over a defendant. See *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987).  "Constitutional due process requires that service of process be reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652 (1950).

Defendants raise three objections to Plaintiffs' service:  as to the non-Russian Defendants, delivery by Federal Express is not service by mail under Rule 4(f) and (h); Plaintiffs' affidavits of service (Dkt. No. 4, 8) to the non-Russian Defendants are improper under Rule 4(*l*); and the attempts to serve Russian Defendants by personal delivery and registered Russian mail were contrary to the Hague Convention and Rule 4(f) and (h) and thus invalid.  As the Individual Defendants have been dismissed, I need only consider whether service was proper as to the Corporate Defendants:  Halverston and RBC.

Rule 4(f) of the Federal Rules of Civil Procedure prescribes the means of service for individuals in a foreign country as well as entities to be served at a place not within any judicial district of the United States.  *See* Fed. R. Civ. P. 4(f); Fed. R. Civ. P. 4(h)(2) (providing that "a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served. . . at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)").

Rule 4(f) in turn permits service in one of three methods: (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Service Convention"); (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice (according to the law of the foreign country for service, as directed by letter rogatory; or by personal service or service by mail that the clerk addresses and sends to the individual and that requires a signed receipt, unless prohibited by the foreign country's law); or (3) by other means not prohibited by international agreement, as the court orders.  *See* Fed. R. Civ. P 4(f).

Service under any of these methods is proper on a foreign corporation outside a judicial district in the United States, except personal delivery.  Fed. R. Civ. P. 4(h)(2).

The Hague Service Convention provides for several alternate methods of service: (1) service through the Central Authority of member states; (2) service through consular channels; (3) service by mail if the receiving state does not object; and (4) personal service. *Burda Media*, 417 F.3d at 300 (citing the Hague Service Convention, Arts. 5, 6, 8, 9 & 10).

A.  Service on Halverston

Defendants challenge service on Halverston, a British Virgin Islands corporation. Plaintiffs sent the summons and complaint via FedEx, which Defendants contend is not "mail" service.  The Hague Convention, to which the British Virgin Islands is a signatory, allows for service through "postal channels," but only if "the State of destination does not object." Hague Convention art. 10.  The British Virgin Islands, a territory of the United Kingdom, does not object to the relevant service here:  service "by postal channels, directly to persons abroad."

Furthermore, the cases cited by Moving Defendants do not persuade the court that FedEx should not be considered a postal channel.  In *NSM Music, Inc. v. Villa Alvarez*, 2003 WL 685338, at *2 (N.D. Ill. Feb. 25, 2003), cited by Defendants, the Court declares without explanation that FedEx should not be construed as a "postal channel" when the Convention could have used more precise language if only the national postal service qualified.  But such a narrow construction, that is not urged for principles of comity, seems contrary to one of the stated goals of the Service Convention, to "create appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time." The other cases are similarly inapposite. *Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co., Ltd.*,

2005 WL 1123755, at *2-3 (S.D.N.Y. May 11, 2005) (involving service pursuant to Rule 4(f)(2)(C)(ii) for instances where "there is no internationally agreed means of service or the applicable international agreement allows other means of service", not an issue here); *In re CINAR Corp. Sec. Litig.*, 186 F. Supp. 2d 279, 303-304 (E.D.N.Y. 2002) (dicta, at best, about whether service by courier is by postal channel).  Accordingly, the motion to dismiss for improper service as to Halverston is denied.

Moving Defendants' argument that the proofs of service are inadequate under Rule 4(*l*) is also a non-starter.  Both cases Defendants cite in support of their position involve service to defendants within the United States.  *See Inversora Murten, S.A. v. Energoprojeckt Holding Co.*, 2009 WL 179463, at *5 (D. Colo. Jan. 22, 2009) (service on Colorado subsidiary); *NxSystems, Inc. v. Monterey Cnty. Bank*, 2012 WL 4093932, at *2 (D. Or. Sept. 17, 2012) (service in California).  Rule 4(f), recognizing the difficulty of service abroad, permits certain liberties that would not be allowed for domestic service—including service by postal channels.  Therefore, the proofs of service executed by Plaintiffs' counsel rather than the FedEx courier are not fatal to Plaintiffs' claim, especially since an invalid proof of service does not affect the validity of service.  Fed. R. Civ. P. 4(*l*)(3) ("Failure to prove service does not affect the validity of service. The court may permit proof of service to be amended.").  The court holds that service as to Halverston is adequate and does not affect this court's personal jurisdiction.

B.  Service on RBC

In an Affirmation of Service dated April 3, 2012 (Dkt. No. 9), Alexander Goldansky declared under penalty of perjury that he served RBC and the Russian Individual Defendants [i.e., Sergey Lavrukhin, Alexander Morgulchik, Vladimir Pakhomov, Mikhail Sosnovsky, Ekaterina Salnikova, Valery Senko and Anton Kiryukhin] "by hand delivering eight copies of

same to Mazur S.I. at Profsouzhnaya Bld. 78, Moscow, Russia" on March 13, 2013. (*Id.*)

Goldansky further declared that he served the same parties "by depositing copies of the above-referenced documents into the custody of Russian Postal Service with registered mail delivery separately addressed to each of the above named individuals and entity at Profsouzhnaya Bld. 78, Moscow, Russia, on April 2, 2013." (*Id.*)  Therefore, Goldansky attempted service by personal delivery and service by mail.  Both of these attempts, however, were ineffective.

1.   Personal Delivery

As stated above, personal delivery is not permitted as to foreign corporations.  *See* Fed. R. Civ. P. 4(h)(2) (foreign corporation outside the United States to be served "in any manner prescribed by Rule 4(f) for serving an individual, except *personal delivery under (f)(2)(C)(i)*") (emphasis added).

2.   Service by Mail

Service by mail is not effective service for a Russian corporation.  The Russian Federation is a signatory to the Hague Convention, but objects to all methods of service in Article 10, including "the freedom to send judicial documents, by postal channels, directly to persons abroad." Hague Service Convention art. 10(a).

But the Court is cognizant of the fact that "[a]lthough Russia is a signatory to the Hague Convention, in July 2003, Russia unilaterally suspended all judicial cooperation with the United States in civil and commercial matters." Accordingly, courts have granted parties' requests to pursue alternative methods of service on Russian defendants pursuant to Rule 4(f)(3) [service "by other means not prohibited by international agreement, as the court orders"]." *Ambriz Trading Corp. v. URALSIB Financial Corp.*, No. 11 Civ. 4420(SAS), 2011 WL 5844115, at *5 (S.D.N.Y. Nov. 21, 2011) (internal citation and quotation marks omitted); *Arista Records LLC v.*

15

*Media Services LLC*, No. 06 Civ. 15319(NRB), 2008 WL 563470, at *2 (S.D.N.Y. Feb. 25, 2008).

This fact does not, however, convert Plaintiffs' service by mail into acceptable service. As another court in this Circuit recently realized, "it is important to distinguish between two actions that Russia has taken with respect to the Hague Convention that are relevant to this case." *Kuklachev v. Gelfman*, No. 08-CV-2214 (CPS), 2008 WL 5068860, at *2 (E.D.N.Y. Nov. 24, 2008). "The first is that Russia has objected to Article 10, which permits service by mail. The second is that Russia is refusing to transmit service requests through its Central Authority, which is the mechanism designated under the Convention for effecting service. . . [but] permitting alternative service [pursuant to Rule 4(f)(3)] due to Russia's failure to abide by the Convention, [] does not change the fact that Russia does not agree to service by mail." *Id.* Accordingly, the Court finds that despite Russia's noncompliance with the Hague Convention, Plaintiffs' service by mail still does not suffice as adequate service.

### 3. Alternative Service under Fed. R. Civ. P. 4(f)(3)

This fact, notwithstanding, the option of alternative service is not foreclosed. Rather, "subsection (f)(3) is an independent basis for service of process and is neither "extraordinary relief" nor a "last resort" to be used only when parties are unable to effectuate service under subsections (f)(1) or (f)(2)" *Ryan v. Brunswick Corp.*, No. 02–CV–0133, 2002 WL 1628933, at *2 (W.D.N.Y. May 31, 2002) (citing *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002)); *Advanced Aerofoil Techs., AG v. Todaro*, No. 11 Civ. 9505(ALC)(DCF), 2012 WL 299959, at *1 (S.D.N.Y. Jan. 31, 2012) ("no hierarchy among the subsections in Rule 4(f)").

To be sure, some courts require a showing of [unavailability] before entertaining a motion for alternative service. *See, e.g.*, *Advanced Aerofoil*, 2012 WL 299959, at *2-3 (denying

motion for alternative service, with leave to renew, as it was "not a matter where the foreign state

has refused to take action or where service has been unduly delayed by the foreign state" and

Plaintiffs had only recently attempted service); *Ambriz Trading*, 2011 WL 5844115, at *5

(noting that "[c]ourts may require plaintiffs to demonstrate a good-faith effort to effectuate

service on a foreign defendant before authorizing an alternative method of service"); *Arista*

*Records*, 2008 WL 563470, at *1 ("a plaintiff seeking relief under Rule 4(f)(3) must adequately

support the request with affirmative evidence of the lack of judicial assistance by the host nation

[as] conclusory assertions of the futility of Hague service are unavailing.") (citation omitted).

But Plaintiffs have met that burden as the Court takes judicial notice of the fact that Russia

refuses to transmit service requests through its Central Authority and thus requests go

unexecuted. Even concluding that Plaintiffs have not yet effectuated service, this Court grants

Plaintiffs' request to "prescribe a method for serving the Russian Defendants" (Opp. at 11).

"By design, Rule 4(f)(3) was adopted in order to provide flexibility and discretion to the

federal courts in dealing with questions of alternative methods of service of process in foreign

countries." *Philip Morris USA Inc. v. Veles Ltd.*, 2007 WL 725412, at *2 (S.D.N.Y. Mar. 12,

2007) (quoting *In re Int'l Telemedia Assoc., Inc.,* 245 B.R. 713 (N.D.Ga.2000)). The appropriate

alternative service will vary depending upon the particular circumstances of the case, but is

"acceptable if it (1) is not prohibited by international agreement, and (2) comports with

constitutional notions of due process." *Jian Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 85 Fed. R.

Serv. 3d 1140 (S.D. N.Y. 2013); *see also Rio Props*, 284 F.3d at 1014 (affirming the propriety of

allowing service of process by regular mail and e-mail under Rule 4(f)(3)).

In this case, Moving Defendants have counsel in New York who have appeared in this

matter for the purpose of challenging jurisdiction.  Accordingly, the Court directs Plaintiffs to

effect service on the Moving Defendants by hand delivering the summons, complaint and any other necessary documents to the New York office of Herbert Smith Freehills New York LLP, to the attention of Garrett Kamen, Esq. and David Wallace, Esq., within 14 days from the date of this Order. *See Arista Records*, 2008 WL 563470, at *2 (directing service be effected by hand delivering the summons, amended complaint and case initiation materials to the offices of Defendants' New York attorneys); *Forum Fin. Group, LLC v. Harvard College,* 199 F.R.D. 22, 23–24 (D. Me.2001) (permitting service of process upon a defendant located in Russia by sending the summons and complaint by certified mail to the defendant's attorneys at the New York law firm of Skadden, Arps, Slate, Meagher & Flom LLP).[3]

III.    Dismissal for Failure to State a Claim

Moving Defendants finally move for dismissal on the merits pursuant to Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a claim must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

On a motion to dismiss, the court will accept the plaintiff's allegations as true, see *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007), and must "draw all reasonable inferences in favor of the plaintiff," *id.* (citing *Fernandez v. Chertoff*, 471 F.3d 45, 51

---

[3] This does not conflict with the Court's earlier conclusion that Plaintiffs' previous attempts of service on the Russian Defendants by mail or hand delivery were insufficient as the Court directs service within a judicial district in the United States, which is not subject to the personal delivery limitation. *See* Fed. R. Civ. P. 4(h)(1),

(2d Cir. 2006)). However, the court need not accept allegations that are merely conclusions of law. *Kassner*, 496 F.3d at 237 (complaint inadequate if it "merely offers labels and conclusions or a formulaic recitation of the elements of a cause of action"). Therefore, on a motion to dismiss, "[t]he appropriate inquiry is not whether a plaintiff is likely to prevail, but whether he is entitled to offer evidence to support his claims." *Fernandez*, 471 F.3d at 51 (internal quotation marks and citation omitted).

"In considering a motion to dismiss, the Court may consider documents attached as an exhibit thereto or incorporated by reference, documents that are "integral" to plaintiff's claims, even if not explicitly incorporated by reference, and matters of which judicial notice may be taken. *Thomas v. Westchester County Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002) (internal citations omitted). To incorporate a document by reference, "the Complaint must make a clear, definite and substantial reference to the document[ ]." *Id.* at 275-76. A plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

A.  Breach of Joint Venture (Count I)

Under New York law, a joint venture is formed when (a) two or more persons enter into an agreement to carry on a venture for profit; (b) the agreement evinces their intent to be joint venturers; (c) each contributes property, financing, skill, knowledge, or effort; (d) each has some degree of joint control over the venture; and (e) provision is made for the sharing of both profits and losses. *SCS Commc'ns, Inc. v. Herrick Co., Inc.*, 360 F.3d 329, 341 (2d Cir. 2004) (citing *Itel Containers Int'l Corp. v. Atlanttrafik Express Serv., Ltd.*, 909 F.2d 698, 701 (2d Cir. 1990)). The absence of any one element is fatal to the establishment of a joint venture." *Kidz Cloz, Inc. v.*

*Officially For Kids, Inc.*, 320 F. Supp. 2d 164, 171 (S.D.N.Y. 2004) (citation omitted).  Plaintiffs do not allege a contribution by each party to the alleged joint venture.  To the contrary, Plaintiffs allege that Defendants failed to make the $2 million initial contribution required under the JVA. (Compl. ¶¶ 24, 28-32, 46).

The same conclusion is necessary even if the court analyzed the relationship as a partnership as "[t]he concepts of 'partnership' and 'joint venture' are closely intertwined" and "the legal consequences of a joint venture are equivalent to those of a partnership."  *Kidz Cloz*, 320 F. Supp. 2d at 171 (citation omitted) (listing four elements required to allege the existence of a partnership as (1) the parties' sharing of profits and losses; (2) the parties' joint control and management of the business; (3) the contribution by each party of property, financial resources, effort, skill, or knowledge to the business; and (4) the parties' intention to be partners). Accordingly, Plaintiffs cannot state a claim for breach of joint venture and this count is dismissed.

### B.  Breach of Contract (Count II)

As a matter of law, in order to sustain a cause of action for breach of contract a plaintiff must allege (1) the formation of a contract; (2) performance by plaintiff; (3) defendant's failure to perform; and (4) resulting damage.  *Sachs v. Zito*, 28 Misc.3d 567, 573-574, 901 N.Y.S.2d 818, 824 (N.Y. Sup. Ct. 2010); *First Investors Corp. v. Liberty Mut. Ins. Co.,* 152 F.3d 162, 168 (2d Cir. 1998).  Although there was a remedy for not making an initial contribution, *see* Feinstein Ex. 1, JVA ¶ 5.4 (proportional reduction of ownership membership interest in the company) and thus does not serve as a basis for a breach of contract claim, Plaintiffs also allege that the Defendants breached the contract because of their unilateral termination of the Joint Venture (Compl. ¶ 41; Feinstein Ex. 1, JVA ¶ 17.2).  Defendants do not contest that the JVA

was formed (Compl. ¶ 19) and they ostensibly disclaimed their participation in the project in the November press release (Compl. ¶ 40). Plaintiffs allege that they were performing under the JVA seeking out business (Compl. ¶¶ 27, 37, 42) and suffered damage for Defendants' failure to perform and abrupt termination (Compl. ¶ 43).  Therefore, Plaintiffs state a breach of contract claim.

### C.  Promissory Estoppel (Count III)

Plaintiffs bring a cause of action for promissory estoppel against the Corporate Defendants, but no basis exists for the claim as a written contract on the subject matter exists. To plead promissory estoppel, a plaintiff must allege: "(1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance by the promisee, and (3) unconscionable injury to the relying party as a result of the reliance." *Readco, R.D.P. v. Marine Midland Bank,* 81 F.3d 295, 301 (2d Cir. 1996).  However, "[p]romissory estoppel is a legal fiction designed to substitute for contractual consideration where one party relied on another's promise without having entered into an enforceable contract." *Bader v. Wells Fargo Home Mortg. Inc.*, 773 F. Supp. 2d 397, 414 (S.D.N.Y. 2011) (citation omitted); *Hughes v. BCI Intern. Holdings, Inc.*, 452 F. Supp. 2d 290, 306 n. 19 (S.D.N.Y. 2006) ("[I]f plaintiffs were required to plead the existence of an enforceable agreement, promissory estoppel would be indistinguishable from a garden variety breach of contract claim."); *Holmes v. Lorch*, 329 F.Supp.2d 516, 527 (S.D.N.Y. 2004) ("Promissory estoppel is a rule applicable only in the absence of an enforceable contract.") (quotation marks omitted).  As such, "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987) (internal citations omitted).

With its promissory estoppel claim, Plaintiffs merely rehash their breach of contract claim. Plaintiffs admit that it had a binding and enforceable contract in the JVA, even suing for breach of contract in this suit. See Count II (Compl. ¶¶ 52-58). The parties do not dispute the validity of that underlying contract. Plaintiffs' promissory estoppel claim is "precluded by the fact that a simple breach of contract claim may not be considered a tort unless a legal duty independent of the contract—i.e., one arising out of circumstances extraneous to, and not constituting elements of, the contract itself—has been violated." *Brown v. Brown*, 12 A.D.3d 176, 176-77, 785 N.Y.S.2d 417, 419 (1st Dep't 2004). Plaintiffs' claim for promissory estoppel is based on the same obligations the Corporate Defendants allegedly failed to perform under the JVA. Given the undisputed presence of an enforceable contract, Plaintiffs' promissory estoppel claim is "indistinguishable from a garden variety breach of contract claim." Hughes, 452 F. Supp. 2d at 306 n.19, and must be dismissed.

D. Wrongful Termination of Partnership and/or Joint Venture (Count IV)

This claim is duplicative of the breach of contract claim, which as discussed above, is based solely on Defendants' unilateral termination of the joint venture. In addition, it would be duplicative of breach of joint venture, which the Court has already determined was not actually formed, *see* Section III.A. Accordingly, this claim is dismissed.

E. Breach of Fiduciary Duty (Count V)

A breach of fiduciary duty claim is duplicative if based on allegations of fiduciary wrongdoing that are expressly raised in plaintiff's breach of contract claim. *Northern Shipping Funds I, LLC v. Icon Capital Corp.*, 921 F. Supp. 2d 94, 105 (S.D.N.Y. 2013) (internal citations, quotation marks, and alterations omitted). "In other words, a plaintiff may not maintain both a contract claim and a breach of fiduciary duty claim, without allegations that, apart from the terms

22

of the contract, the parties created a relationship of higher trust than would arise from their contracts alone, so as to permit a cause of action for breach of fiduciary duty independent of the contractual duties." *Id.*; *Alitalia Linee Aeree Italiane, S.p.A. v. Airline Tariff Publishing Co.,* 580 F. Supp. 2d 285, 294 (S.D.N.Y. 2008) ("Where a fiduciary duty is based upon a comprehensive written contract between the parties, a claim for breach of fiduciary duty is duplicative of a claim for breach of contract.") and must be dismissed.

To the extent Plaintiffs believe they have alleged a separate legal duty because of the contemplated joint venture, they are mistaken. "[A] conventional business relationship, without more, does not become a fiduciary relationship by mere allegation." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F.Supp.2d 162, 194 (S.D.N.Y. 2011) (citations omitted). Any collaboration or joint venture (although none was formed in the legal sense, see Part III.A *supra*), is a direct result of the JVA and creates no duty apart from it. Therefore, the duplicative breach of fiduciary duty claim is dismissed. *Ellington Credit Fund*, 837 F. Supp. 2d at 196 ("In New York, a cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand." (internal brackets and quotation marks omitted)).

F.  Fraud (Count VI)

A claim for fraud under New York law requires a showing of: "(1) a misrepresentation or material omission of fact which was false and known to be false by defendant, (2) made for the purpose of inducing the other party to rely upon it, (3) justifiable reliance of the other party on the misrepresentation or material omission, and (4) injury." *Lama Holding Co. v. Smith Barney, Inc.,* 88 N.Y.2d 413, 421 (1996). *Accord Manning v. Utilities Mut. Ins. Co.*, 254 F.3d 387, 400 (2d Cir. 2001). But a plaintiff may not convert a breach of contract claim into a fraud claim by merely alleging that a contracting party never intended to fulfill its promise under the agreement.

23

*SKR Resources, Inc. v. Players Sports, Inc.*, 938 F. Supp. 235, 238 (S.D.N.Y. 1996) (citing, inter alia, *Strojmaterialintorg v. Russian Am. Commercial Corp.*, 815 F. Supp. 103, 105 (E.D.N.Y. 1993) ("a claim predicated on a breach of a contractual arrangement cannot be converted into a fraud claim simply by allegations that a defendant never intended to adhere to its obligations under the agreement")); *Value Time, Inc. v. Windsor Toys, Inc.*, 700 F. Supp. 6, 7 (S.D.N.Y. 1988) (dismissing fraud counterclaim as a reiteration of the contract claim where party bringing counterclaim pleaded no duty "separate and distinct from what appears within the four corners of the agreements" ).

Plaintiffs contend that the fraud occurred after the contract was made when Morgulchik and Lavrukhin discussed expansion of BOTC Russia's business and intended to induce reliance. (*See* Compl. ¶¶ 34-37).[4]  Plaintiffs' distinctions fail to support an actionable claim.  Even accepting Plaintiffs' argument that their fraud claim is based solely on the Defendants' misrepresentation that they wanted to expand BOTC Russia's services, any obligation to repay stems only from the underlying JVA.  As the Second Circuit has explained:  "We may assume that these representations were intended to lull [Plaintiffs] into a false sense of security and that they did so to [Plaintiffs'] detriment.  However, these facts amount to little more than intentionally-false statements [on behalf of RBC] indicating [its] intent to perform under the contract. That is not sufficient to support a claim of fraud under New York law."

---

[4] Moreover, although Plaintiffs describe talks of expansion to get more reliance, the stated "expansion" was the same purpose of the original JVA, not an expansion at all. *Compare* Compl. ¶ 22 (describing Bidonthecity.com as the "leading online luxury real estate auction site" that would launch the BidOnTheCity platform in Russia") *with* Compl. ¶ 35 (parties decided to "expand operations of the Company and engage in sale of luxury real estate and concierge real estate services in Moscow and Moscow region with the help of new financial and strategic partners").

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs, Inc.*, 98 F.3d 13, 19 -20 (2d Cir. 1996);
*Carlucci v. Owens-Corning Fiberglas Corp.*, 646 F. Supp. 1486, 1491 (E.D.N.Y. 1986) ("a
claim predicated upon a breach of a contractual arrangement cannot be converted into a fraud
claim simply by allegations that a defendant never intended to adhere to its obligations under the
agreement").

Thus, Defendants' alleged statements made after the JVA was entered to expand the
scope of BOTC Russia were "promissory—simply a representation regarding future intent to
perform under the contract, not misrepresentations of present fact." *EQT Infrastructure Ltd. v.
Smith*, 861 F. Supp .2d 220, 236 n.13 (S.D.N.Y. 2012) (citing *Bridgestone/Firestone, Inc.*, 98
F.3d at 19-20); *Stewart v. Jackson & Nash*, 976 F.2d 86, 89 (2d Cir. 1992) ("[P]romissory
statements as to what will be done in the future . . . give rise only to a breach of contract claim. .
.") (alteration and internal quotation marks omitted).

Defendants' alleged false promises do not support an independent fraud claim.  To the
extent the fraud claim refers to RBC's unfulfilled initial contribution, it must be similarly
dismissed as the contract provided a remedy for this scenario (Feinstein Decl. Ex. 1, JVA § 5.4).

G.  Tortious Interference of Contract (Count VII)

Under New York law, a plaintiff alleging tortious interference with contractual relations
must plead "(1) the existence of a valid contract between the plaintiff and a third party; (2) the
defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-
party's breach of the contract without justification; (4) actual breach of the contract; and (5)
damages." *Gundlach v. IBM Japan, Ltd.*, No. 11–CV–846 (CS), 2013 WL 6123627, at *7
(S.D.N.Y. Nov. 21, 2013) (quoting *Kirch v. Liberty Media Corp.,* 449 F.3d 388, 401 (2d Cir.
2006).

Plaintiffs weakly allege that it entered contracts with third parties with Defendants'
encouragement (Compl. ¶¶ 37, 39) and that Defendants knew about these contracts (Compl. ¶
39). But Plaintiffs fail to allege that Defendants intended to entice third parties to breach those
contracts, in no small part because they do not allege any breach of contract by the alleged third
parties. *Gundlach*, 2013 WL 6123627, at *7; *Fonar Corp. v. Magnetic Resonance Plus, Inc.*,
957 F. Supp. 477, 481 (S.D.N.Y. 1997) ("[I]n order to establish a claim under the tort of
interference with contractual relations, a third party must breach the contract after being induced
to do so by the defendant."). The mere discouragement of the contractual purpose is not enough
where the Plaintiffs do not allege breach by the third party. *See Fonar,* 957 F. Supp. at 481
(concluding, that despite presence of case law that rendering performance of the contract
impossible is enough to constitute a tortious interference with contractual relations even in the
absence of breach, the New York Court of Appeals and Second Circuit required breach).
Plaintiffs do not adequately plead a claim for tortuous interference of contract and the claim is
dismissed.

H.  Defamation (Count VIII)

Defamation—injury to one's reputation by written expression—is libel. *See Morrison v.
Nat'l Broad. Co.*, 19 N.Y.2d 453, 458, 280 N.Y.S.2d 641, 644, 227 N.E.2d 572 (1967). To
establish a prima facie case of injury based on the publication of libel or slander, a plaintiff must
allege: 1) a false and defamatory statement of and concerning the plaintiff; 2) publication by
defendant of such a statement to a third party; 3) fault on part of the defendant; and 4) injury to
plaintiff. *Idema v. Wager*, 120 F. Supp. 2d 361, 365 (S.D.N.Y. 2000).   As relevant here, a
statement that "tend[s] to injure another in his or her trade, business or profession" is defamatory
*per se. Stern v. Cosby,* 645 F. Supp. 2d 258, 273 (S.D.N.Y. 2009) (citing *Liberman v. Gelstein*,

80 N.Y.2d 429, 435, 590 N.Y.S.2d 857, 605 N.E.2d 344 (1992)). Statements that are defamatory per se are actionable without pleading and proof of special damages. *Boehner v. Heise*, 734 F. Supp. 2d 389, 398 (S.D.N.Y. 2010) (citing *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 179 (2d Cir.2000).

Plaintiffs allege that the November press release issued by Defendants erroneously claimed that Defendants were shutting down BOTC when they had no right to do so (Compl. ¶¶ 40-41). This false statement allegedly caused damage to Plaintiffs' contractual obligations and business reputation in Russia and abroad (Compl. ¶ 43). Defendants do not present a qualified privilege for the statement and because injury in business is per se defamatory, Plaintiffs need not allege malice, although they cursorily do. (Compl. ¶ 95). Accordingly, Plaintiffs allege a prima facie claim of defamation to overcome dismissal at this time.

CONCLUSION

For the reasons stated above, Moving Defendants' motion for dismissal for lack of personal jurisdiction is DENIED as to Halverston and RBC, but GRANTED as to Sergey Lavrukhin, Mikhail Sosnovsky, Vladimir Pakhomov, Neil Osborn, Michael Hammond, Christophe Charlier, Valery Senko, Ekaterina Salnikova, and Anton Kiryukhin, the "Individual Defendants." The Individual Defendants are hereby dismissed as defendants for this Court's lack of personal jurisdiction over them.

Moving Defendants' motion to dismiss for inadequate service is DENIED as to Halverston and RBC, provided that RBC may renew its motion if Plaintiffs do not effect service on the Moving Defendants by hand delivering the summons, complaint and any other necessary documents to the New York office of Herbert Smith Freehills New York LLP, to the attention of Garrett Kamen, Esq. and David Wallace, Esq., within 14 days from the date of this Order.

Moving Defendants' motion to dismiss for failure to state a claim is GRANTED in part and DENIED in part. Specifically, the motion is granted as to Count I (breach of joint venture), Count III (promissory estoppel), Count IV (wrongful termination of partnership or joint venture), Count V (breach of fiduciary duty), Count VI (fraud and/or fraudulent inducement) and Count VII (tortuous interference of contract). The motion is denied as to Count II (breach of contract) and Count VII (defamation).

The Clerk is respectfully directed to close this motion (Dkt. No. 14).

SO ORDERED.

Dated:      New York, New York
            March 31, 2014

                                    _____
                                    ANDREW L. CARTER, JR.
                                    United States District Judge

28